Eastern District of Kentucky
**F I L E D**
SEP 2 7 2018
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CRIMINAL ACTION NO. 18-CR-67-KKC**

**UNITED STATES OF AMERICA**                          **PLAINTIFF**

**V.**                      <u>**PLEA AGREEMENT**</u>

**BRADLEY A. WHITE**                           **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 21 U.S.C. § 846, Conspiracy to Distribute 40 grams or more of fentanyl, a Schedule II controlled substance and a quantity of heroin, a Schedule I controlled substance. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 2 through 5.

2. The essential elements of Count 1 are:

    (a) that two or more persons agreed to distribute fentanyl a Schedule II controlled substance and heroin, a Schedule I controlled substance, and

    (b) that at some time during the existence of the agreement, the Defendant knew the purpose of the agreement, and then deliberately joined the agreement.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) Between on or about November 1, 2017, and March 18, 2018, the Defendant engaged in an agreement with Byron White to distribute controlled substances in Lexington, Fayette County, Kentucky in the Eastern District of Kentucky. Pursuant to that agreement, the Defendant and Byron White did distribute controlled substances at a specified location in Lexington. On these occasions, the Defendant had contact with a cooperating witness (CW) and discussed price, quantity, and the distribution location. Byron White would actually deliver the controlled substances to the CW in exchange for cash.

(b) Specifically, on or about November 16, 2017, the CW made contact with the Defendant to obtain a quantity of heroin. The Defendant lived in Louisville. The transaction was arranged between the CW and the Defendant for a specified location in Lexington. The Defendant contacted Byron White to complete the transaction as agreed upon between the CW and the Defendant. Byron White obtained the suspected heroin and delivered the amount to the CW at a specific location in exchange for $1,800 in cash from the CW. Byron White subsequently turned the cash over to another person. Said amount tested positive at the Kentucky State Police (KSP) Lab for 22.55 grams of heroin, a Schedule I controlled substance.

(c) On or about December 5, 2017, and December 22, 2017, the CW made contact with the Defendant to obtain another quantity of heroin/fentanyl. On both listed dates, price quantity and distribution location were agreed upon between the CW and the Defendant. As stated above, the Defendant contacted Byron White to complete the transaction. Byron White obtained the suspected heroin/fentanyl and actually delivered the controlled substances to the CW on both occasions. Byron White received $1,800 in cash on both occasions from the CW for the distributions. Byron White subsequently turned the cash on both occasions over to another person. Said amounts tested positive at the KSP Lab for 34.19 grams and 28.16 grams of a heroin/fentanyl mix, respectively. Heroin is a Schedule I controlled substance and fentanyl is a Schedule II controlled substance.

(d) On or about January 17, 2018, the CW made contact with the Defendant to obtain a quantity of controlled substances. As stated above, the transaction was arranged between the CW and the Defendant for a location in Fayette County, Kentucky. The Defendant contacted Byron White to complete the transaction as discussed between the CW and the Defendant. Byron White obtained the suspected heroin/fentanyl and delivered the amount to the CW. Byron White received $3,000 in cash from the CW for the distribution. Byron White subsequently turned the cash over to another person. Said amount tested positive at the KSP Lab for 55.73 grams of fentanyl, a Schedule II controlled substance.

4. The statutory punishment for Count 1 is imprisonment for not less than 10 years and not more than LIFE years, a fine of not more than $8,000,000 and a term of supervised release of at least 8 years. A mandatory special assessment of $100.00 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the sentencing hearing. The above Defendant has previously been convicted of the state felony drug offense of Trafficking in Marijuana, 8 ounces to less than 5 pounds, from the Jefferson County, Kentucky Circuit Court under Indictment number 13-CR-002676, prior to the commission of the felony offenses alleged in this Indictment. Therefore, the Defendant has a prior final drug felony conviction as set forth in the notice filed by the United States pursuant to 21 U.S.C. § 851, and therefore the Defendant is subject to the above enhanced statutory punishment.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) United States Sentencing Guidelines (U.S.S.G.), November 2016, Manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as the drug amounts of 22.55 grams of heroin, 62.37 grams of a heroin/fentanyl mixture, and 55.73 grams of fentanyl.

    (c) Pursuant to U.S.S.G. § 2D1.1(8), the base offense level is a level 24.

    (d) The Defendant understand that he may be categorized as a Career Offender. The Defendant retains the right to contest such a designation if it is applied.

(e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea, conviction, and sentence with the one exception that he retains the right to appeal any determination by this Court that he is a Career Offender. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval

4

from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

9. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

10. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

11. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

12. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

13. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 9/27/18        By: _____
                         Roger W. West
                         Assistant United States Attorney

Date: 9/27/18        _____
                         Bradley A. White
                         Defendant

Date: 9/27/18        _____
                         Hon. Whitney True Lawson
                         Attorney for Defendant

6